UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

STEVEN E. CHIARAVALLE,

                                Plaintiff,

      v                                       **DECISION AND ORDER**
                                                             11-CV-597S

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

                                Defendant.

      1.      Plaintiff, Steven E. Chiaravalle, challenges an Administrative Law Judge's (hereinafter "ALJ") determination that he is not disabled as defined in the Social Security Act (hereinafter "the Act"). Plaintiff alleges that he is disabled by bipolar disorder, sever anxiety, panic disorder, agoraphobia, depression, herniated and bulging disks in his lower back, metal plate with screws in his left elbow, scoliosis, spinal stenosis, and asthma. (R. 104.) Plaintiff contends that his impairments render him unable to work. He therefore asserts that he is entitled to payment of Supplemental Security Income (hereinafter "SSI") disability benefits.

      2.      Plaintiff filed an application for SSI benefits on April 22, 2010, alleging an onset date of April 9, 2010. (R. 88.) The Commissioner denied the application on July 29, 2010. (R. 55-58.) ALJ Timothy McGuan held an administrative hearing on February 14, 2011, at which Plaintiff and his mother appeared without counsel and testified. (R. 59-61; R. 26-47.) ALJ McGuan considered the case *de novo*, and on March 4, 2011, issued a decision denying Plaintiff's application for SSI benefits. (R. 11-25.) On June 28, 2011, the

Appeals Council denied Plaintiff's request for review.  Plaintiff filed the current civil action on July 15, 2011, challenging Defendant's final decision.[1] (R. 5-7.)

3. On January 25 and 28, 2012, the Commissioner and Plaintiff filed Motions for Judgment on the Pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket Nos. 6, 8.)  After full briefing, this Court took the motions under advisement without oral argument.

4. A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998); see also Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is evidence that amounts to "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971), and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id.  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

5. "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support

---

[1] The ALJ's March 4, 2011 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

2

the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

6. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

7. This five-step process is detailed below:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

8.  While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step of this inquiry is, in turn, divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

9.  In this case, the ALJ made the following findings with regard to the five-step process set forth above: (1) Plaintiff has not engaged in substantial gainful activity since April 9, 2010 (R. at 13);[2] (2) Plaintiff suffers from serve impairments including L2-3 disc bulge, L4-5 disc herniation, L5-D1 shallow broad based herniation, scoliosis, left elbow fracture requiring surgical repair, asthma, depression, and social anxiety (R. 14); (3) Plaintiff's impairments or combination of impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.920(d), 416.925, and 416926) (R. 14); (4) Plaintiff has no exceptional limitations, has the residual functional capacity to perform light work as defined in 20 C.F.R. 416.967(b), can occasionally climb ramps or stairs, balance, stoop, kneel, and crouch, can occasionally push and pull with upper extremities but not more than 20 pounds, should avoid concentrated exposure to fumes, dust, odors, and temperature extremes, cannot interact with the public (R. 17-23); and (5) Plaintiff had no past relevant work.  (R. 23.)  Based upon

---

[2]  Citations to the underlying administrative record are designated as "R."

his review of the entire record, including Plaintiff's age, education, and residual functional capacity, the ALJ found that Plaintiff could perform work that existed in the national economy. (R. 24.)  Ultimately, the ALJ determined that Plaintiff was not under a disability, as defined by the Act, since April 22, 2010, the date he filed his application. (R. 25.)

       10. Plaintiff lodges six challenges to the ALJ's decision. First, he contends that the ALJ failed to include all of his functional limitations and impairments when he posed hypothetical questions to the vocational expert. Specifically, Plaintiff contends that the hypothetical questions did not contain the same limitations found by Dr. Santarpia and Dr. Andrews. Plaintiff maintains that his limitations, considered together, could disqualify him from the available employment positions outlined by the vocational expert. In Plaintiff's view, the omission of these key limitations constitutes reversible error.

       11. A vocational expert's testimony concerning available employment in the national and local economy is beneficial only if it reflects a plaintiffs' actual limitations. Aubeuf v. Schweiker, 649 F.2d 107, 114 (2d Cir. 1981); see also Mathews v. Barnhart, 220 F. Supp. 2d 171, 175 (W.D.N.Y. 2002) (citing Bradley v. Bowen, 800 F.2d 760, 763 (8th Cir.1986) ("Vocational testimony elicited by hypothetical questions that fail to relate with precision to the physical and mental impairments of a claimant is not substantial evidence on which an ALJ may base a decision."))

       12. Here, the ALJ questioned the vocational expert on the particular limitations found by both Dr. Santarpia and Dr. Andrews. Dr. Santarpia concluded that

> "The claimant is able to follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks within normal limits. Mild impairment is demonstrated in performing complex tasks independently, making appropriate decisions, relating

      adequately with others and appropriately dealing with stress"
      (R. 312.)

He further asserted that Plaintiff's psychiatric condition is not significant enough to interfere with Plaintiff's ability to function on a daily basis. (Id.)

    13.    Dr. Andrews concluded that Plaintiff's understanding and memory is not significantly limited. (R. 332). Additionally, Plaintiff's sustained concentration and persistence is not significantly limited in 5 of 7 subcategories (moderately limited in the ability to work in coordination with others and moderately limited in the ability to complete a normal workday/workweek without an unreasonable number of rest periods.) (Id. pgs. 332-33.) Plaintiff's social interaction is not significantly limited in 2 of 4 subcategories (moderately limited in the ability to interact appropriately with the general public and moderately limited in the ability to get along with coworkers or peers without distracting them). Finally, Plaintiff's adaption is not significantly limited in 3 of 4 subcategories (moderately limited in the ability to respond to changes in the work setting). (Id. pg. 333.)

    14.    The ALJ asked the vocational expert about available positions in the national and regional economy for a person who is Plaintiff's same age and same education level. (R. 43.) This limitation recognizes Dr. Santarpia's mild concern about Plaintiff's ability to handle complex tasks. (R. 312.) The vocational expert subsequently provided unskilled employment possibilities. (See R. 44-45.)

    15.    The ALJ asked the vocational expert about available positions in the national and regional economy for a person who cannot interact with the public. (R. 43.) This limitation recognizes the mild/moderate concerns of both Dr. Santarpia and Dr. Andrews regarding Plaintiff's ability to interact with the public and co-workers. (compare R. 43 with R. 312 and R. 332.) The vocational expert subsequently provided employment positions

for people with limited interaction skills.  (See R. 44-45.)

16.     The ALJ asked the vocational expert about available positions in the national and regional economy for a person capable of only sedentary exertion.  This limitation recognizes the moderate concern Dr. Andrews had about Plaintiff handling a workday/week without too many rest periods.  (R. 332-333.)

17.     According to the vocational expert, a hypothetical person with the same non-exertional limitations above but limited to light exertion can serve as either a small parts assemblyman with 1,380 positions regionally or as a mail clerk with 915 positions regionally.  (R. 44.)  According to the vocational expert, a hypothetical person limited to sedentary exertion can serve as either a label painter with 495 positions regionally or as a surveillance system monitor with 1,255 local positions.  (R. 45.)  Because the hypothetical questions included the limitations that both Dr. Andrews and Dr. Santarpia identified, there is substantial evidence to support the ALJ's decision.

18.     Plaintiff next contends that the ALJ failed to properly evaluate and weigh Dr. Rajeswara Nagalla's opinion, as required under 20 C.F.R. § 416.927(d) and SSR 96.6p.  Dr. Nagalla is Plaintiff's primary care physician.  (R.33.)  Specifically, Plaintiff argues that the ALJ did not discuss any of the six factors present in 20 C.F.R. § 416.927(d).

19.     The ALJ will give controlling weight to a treating physician when his or her opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. § 404.1527(d)(2); see Roma v. Astrue, No. 10-4351-cv, 2012 WL 147899, at *18 (2d Cir. Jan. 19, 2012).  But a treating physician's opinion is not binding if it is contradicted by substantial evidence.  Parker v. Harris, 626 F.2d 225, 232 (2d Cir. 1980).

20. When a treating physician's opinion is not given controlling weight, other factors are considered, such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency, and specialization. 20 C.F.R. § 404.1527 (c)(2)-(6).

21. The ALJ afforded no weight to Dr. Nagalla's opinion because he found it to be inconsistent with the record and not based on objective evidence. (R. 23.) Dr. Nagalla concluded that Plaintiff could lift and carry up to ten pounds occasionally, but not anything heavier. (R. 426.) He also concluded that Plaintiff had extreme limitations understanding and remembering simple and complex instructions, carrying out simple and complex instructions, and making judgments on simple and complex work-related decisions. (R. 433.) Finally, Dr. Negalla concluded that Plaintiff had extreme limitations interacting appropriately with the public, interacting appropriately with supervisor(s), interacting appropriately with co-workers, and responding appropriately to usual work situations and to changes in a routine work setting. (R. 434.)

22. These conclusions are inconsistent with the opinions of Dr. Andrews, Dr. Balderman, and Dr. Santarpia. Dr. Andrews and Dr. Santarpia concluded that Plaintiff can understand simple directions and instructions, and perform simple tasks based on those instructions. (Compare R. 312 with R. 322.) In addition, they concluded that Plaintiff had only a mild impairment in his ability to understand and perform complex tasks, in contrast to Dr. Negalla's assessment. (Id.) Dr. Andrews and Dr. Santarpia are both psychologists and therefore their opinions as specialists can be afforded more weight to the mental condition of the Plaintiff than that of Dr. Nagalla, who is a family practitioner. R. 313; R. 314; 20 C.F.R. § 404.1527 (c)(2)-(6). Dr. Balderman concluded that Plaintiff has moderate

limitations in lifting and pushing with the left hand; Plaintiff himself said he can lift 10-20 pounds and can do laundry, light cleaning, and occasionally mowing or shoveling. (R. 317; R. 139.) The ALJ considered all of these opinions. (See R. 22-23.)

23. Based on the foregoing, this Court finds no error in the ALJ's application of the treating physician's rule or his decision to disregard Dr. Nagalla's opinion regarding Plaintiff's mental or physical conditions. It is the ALJ's sole responsibility to weigh all of the medical evidence and resolve any material conflicts in the record. See Richardson v. Perales, 91 S. Ct. 1420, 1426. Because Dr. Nagalla's medical findings are inconsistent with Dr. Andrews, Dr. Balderman, Dr. Santarpia, and other objective evidence, the ALJ was not required to give it any weight.

24. Plaintiff next argues that the ALJ failed to find his Attention Deficit Hyperactivity Disorder ("ADHD") to be a severe impairment. Plaintiff asserts that the combined impact of severe impairments may be determinative, even if one impairment is not sufficient by itself.

25. If an impairment or a combination of impairments does not significantly limit a claimant's mental and physical ability to do basic work activities, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(c). Plaintiff did not allege ADHD as a disability when he applied for Social Security Income benefits. (See R. 104.) Plaintiff maintains that his disability began on April 9, 2010, though he now relies on a 2007 assessment of his ADHD by Dr. Adegbite. (R. 88; R. 259.) This is well before the relevant disability period.

26. Plaintiff further argues that the ALJ failed to perform a function-by-function analysis in reaching his RFC finding. The Second Circuit has not yet determined whether non-compliance with the function-by-function analysis is grounds for remand. Kelly v.

Astrue, No. 09–CV–1359, 2011 WL 817507, at *8 (N.D.N.Y. Jan. 18, 2011).  The more significant issues are first "whether the ALJ discussed the claimant's work-related functions and limitations in his or her RFC analysis," and second "whether, regardless of how the ALJ's RFC assessment was expressed, it was supported by substantial evidence." Carrigan v. Astrue, No. 2:10–cv–303, 2011 WL 4372651 * 8 (D. Vt. Aug. 26, 2011.)  "The A.L.J. must avoid perfunctory determinations by considering all of the claimant's functional limitations, describing how the evidence supports her conclusions, and discussing the claimant's ability to maintain sustained work activity, but she need not provide a narrative discussion for each function."  Novak v. Astrue, No. 07 Civ. 8435(SAS), 2008 WL 2882638, at *3 (S.D.N.Y. July 25, 2008).

27.    In this case, before making his residual functional capacity determination, the ALJ discussed in detail Plaintiff's medical history, records, treating and examining physicians conclusions, and Plaintiff's written submissions and testimony.  (See generally R. 17-23.)  The ALJ concluded, that "the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b), except he cannot climb ropes or ladders or crawl and he can occasionally climb ramps or stairs, balance, stoop kneel and crouch."  (R. 17.)  The ALJ also commented that the claimant can push and pull no more than 20 pounds, and should avoid concentrated exposure to fumes, dust, odors, and cannot interact with the public.  (Id.)  Although the ALJ did not address every function individually, he considered all of Plaintiff's functional limitations and sufficiently explained how the evidence supported his residual functional capacity determination.  Remand is therefore not warranted.

28.     Plaintiff next argues that the ALJ failed to assess Plaintiff's and Tara Chiaravalle's credibility, as required under SSR 96-7P and 20 C.F.R. § 416.929, and failed to swear in Tara Chiaravalle, as required under 20 C.F.R. § 406.1540(e).  Plaintiff also argues that the ALJ improperly drew unwarranted inferences from the record evidence to discredit him.

29.     "When, as here, the evidence of record permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983).  The ALJ therefore did not need to specifically address each portion of Plaintiff's and Tara Chiaravalle's testimony.  (R. 28-42.)   Additionally, the record indicates that all witnesses, including Tara Chiaravalle, were sworn in before testifying.  (R. 31) ("I might as well swear everybody in."); (R. 43.) ("Whereupon, Ms. Andrews, the vocational expert, having first been duly sworn, testified as follows.")

30.     Plaintiff's final argument is that the ALJ violated SSR-96-7P by failing to consider the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms."  Plaintiff contends that the decision also lacks any discussion of side effects.

31.     The ALJ is required to consider all relevant evidence.  20 C.F.R. § 416.945(a)(1). But the ALJ is not required to "specifically address each piece of evidence in his decision." Jones v. Barnhart, No. 04-CV-2772, 2004 WL 3158536, at *6 (E.D.N.Y. Feb. 3, 2004.)  He does not need to resolve every conflict in the record.  Rockwood v.

Astrue, 614 F. Supp. 2d 252, 282. (N.D.N.Y. 2009) (citing <u>Ferraris v. Heckler</u>, 728 F.2d 582, 587 (2d Cir.1984.))

32. The decision and the record indicate that the ALJ considered Plaintiff's medication and side effects. Although Tara Chiaravalle testified that Plaintiff suffered drowsiness as a result of his medications, (R. 40-41), no examining medical professional identified any side effects, a point which Plaintiff concedes. (<u>See</u> Docket No. 14, pg. 7.) The ALJ therefore did not err by failing to consider side effects from medication.

33. After careful examination, this Court finds that substantial evidence in the record supports the ALJ's decision. The ALJ thoroughly examined the entire record, giving appropriate weight to all of the medical findings, including those reported by Plaintiff's treating physician. (R. 15-20.) Finding no reversible error and further finding that substantial evidence supports the ALJ's decision, the Defendant's Motion for Judgment on the Pleadings is granted and Plaintiff's motion seeking the same relief is denied.

IT HEREBY IS ORDERED, that Defendant's Motion for Judgment on the Pleadings (Docket No. 6) is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 8) is DENIED.

FURTHER, that the Clerk of Court is directed to close this case.

SO ORDERED.

Dated: August 31, 2012
      Buffalo, New York                                            /s/William M. Skretny
                                                                     WILLIAM M. SKRETNY
                                                                          Chief Judge
                                                        United States District Court